UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RPM ECOSYSTEMS ITHACA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09-CV-1512 (CEJ) |
| | ) | |
| LOVELACE FARMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### **MEMORANDUM AND ORDER**

Plaintiff RPM Ecosystems, LLC, brings this patent infringement action against defendants Lovelace Farms, Inc., and Wayne and Judy Lovelace.[1] Defendants assert counterclaims for patent infringement and a declaration of non-infringement. The parties have filed cross-motions for summary judgment. Defendants included a challenge to plaintiff's standing to assert a patent infringement claim. The parties have provided supplemental briefing on the issue of standing and all issues are fully briefed.

I.  **Background**

Wayne Lovelace is an inventor of a patented method for accelerating the propagation of hardwood trees, known as the Root Production Method, or "RPM."[2] United States Patent Number 7,208,775, Defs. Ex. A [Doc. #86-1]. In 2006, the

---

[1]Previously, the plaintiff was granted leave to voluntarily dismiss its specific performance claim.

[2]In 2002, the inventors assigned the RPM patent to Forrest Keeling Nursery, a nursery that Lovelace Farms acquired in 2005. In 2008, Forrest Keeling assigned the patent to Lovelace Farms, which then assigned it to Wayne and Judy Lovelace, who assigned it to RPM Technologies. In December 2009, after this lawsuit was filed, RPM Technologies reassigned the patent to Wayne and Judy Lovelace. Abstract of Title, Pl. Ex. LL, [Doc. #80-2].

Lovelace and Marshall families decided to join forces to promote RPM technology. To that end, on October 30, 2006, they signed a Memorandum of Agreement ("the Agreement"), pursuant to which the Lovelaces agreed to contribute the RPM technology and the Marshalls agreed to contribute capital to a new venture. Agreement, Comp. Ex. A [Doc. #2-2].

As contemplated by the Agreement, the Lovelaces and Marshalls formed three limited liability corporations: (1) RPM Technologies, LLC, which was formed to own and issue licenses for the technology; (2) RPM Holdings, LLC, which was established to own "special purpose companies;" (3) plaintiff RPM Ecosystems Ithaca, LLC, (the first of the three special purpose companies) which was formed to develop a nursery facility in Ithaca, New York.[3] RPM Technologies was wholly owned by the Lovelaces;[4] equity in RPM Holdings was split equally between the Marshalls and Lovelaces; Ecosystems was wholly owned by RPM Holdings and thus owned equally by the Marshalls and Lovelaces. Lovelace Farms, Inc. v. Marvin Marshall, 442 S.W.3d 202, 204 (Mo. Ct. App. 2014).

On October 30, 2007, RPM Technologies issued a license to Forrest Keeling Nursery, a business owned by Lovelace Farms. Pl. Ex. H [Doc. #80-1 at 46-55]. Broadly speaking, Forrest Keeling was granted exclusive rights to exercise the technology in 16 states, China, and other unspecified "foreign countries and territories." §§ 1.5, 2.1. Forrest Keeling also retained the right to serve its existing customers in Pennsylvania, and it was given a "terminable" right to develop and

---

[3]Ecosystems is no longer in operation.

[4]The Agreement provided that the Marshalls would acquire 50% ownership of RPM Technology upon full payment of a $1 million note. Agreement, "Sale of Units" at p.3. The Marshalls did not make this payment. Deft's Stmt. of Uncont. Mat. Facts at ¶10.

2

serve new customers everywhere in the United States and Canada, with the exception of the states in which Ecosystems had exclusive rights. §§ 1.6, 2.3, 2.4. As new Ecosystem nurseries were established and licensed, Forrest Keeling retained the right to serve its existing customers but was barred from soliciting new business in Ecosystem territories. § 3.2.

On November 7, 2007, RPM Technologies issued a Master License to RPM Holdings. The Master License provides the following:

> <u>Exclusive Grant.</u> Master Licensor [RPM Technologies] hereby grants to Master Licensee [RPM Holdings] the exclusive . . . non-transferable, royalty-free right to make, have made, use, have used, reproduce, copy, have copied, modify, have modified, create derivative works from, market, advertise, display, distribute, have distributed, improve, license, sell, have sold, and import the Root Production Methodology (including all rights to propagate, grow, operate a nursery and sell nursery stock) and all other RPM Intellectual Property and improvements thereof in the Territory.

Master License Agreement at § 2.1, Comp. Ex. B [Doc. #2-3]. The "Territory" included the United States and Canada but excluded the territory separately granted to Forrest Keeling. Id. at §§ 1.4, 3.1. RPM Technologies retained title to the RPM intellectual property and all future improvements or modifications, and granted a license to RPM Holdings in all future patents and patent applications. Id. at §§ 4.1 and 5. RPM Holdings was granted the right to license the RPM intellectual property to others within the Territory. Id. at § 9. RPM Technologies agreed to prosecute all patent applications of the technology and, in the event it decided to abandon any patent application, give RPM Holdings the opportunity to take over the prosecution and assume title to the RPM intellectual property. Id. at § 13.

On April 17, 2009, RPM Holdings issued a "Sublicense" to plaintiff Ecosystems. Pl. Ex. K [Doc. #80-1 at 69-70]. The sublicense granted Ecosystems "the exclusive

3

right to make, use and sell Licensed Products" in 14 states and Washington, D.C., and "the right to exercise all other rights granted to [RPM Holdings] under the Master License, subject to all obligations, conditions and restrictions set forth in the Master License, including the rights of Forrest Keeling Nursery as described therein."

In this action, the opposing parties each allege that the other sold products based on RPM-technology within its exclusive territory in violation of 35 U.S.C. § 271.[5] In addition, plaintiff argues that the defendants made infringing sales in the exclusive territory of two later-established Ecosystems entities (Ecosystems Gulf Coast, LLC and Ecosystems Southeast, LLC) and, therefore, plaintiff is entitled to judgment on this claim as well.

## II. Discussion

### A. Standing

"[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990). "[T]o assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title at the inception of the lawsuit." Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc., 587 F.3d 1375, 1378 (Fed. Cir. 2009) (quoting Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003)).

Standing to sue for patent infringement derives from the Patent Act, which provides that a "patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The term "patentee" includes "not only the patentee to

---

[5]As set forth elsewhere, the parties have been engaged in litigation in multiple venues since at least July 2009. Memorandum and Order at 2-4. [Doc. #72].

4

whom the patent was issued but also the successors in title to the patentee."[6] 35 U.S.C. § 100(d). The right to sue infringers is normally the privilege of the person that has legal title to the patent. Great Lakes Intellectual Prop. Ltd. v. Sakar Int'l, Inc., 516 F. Supp. 2d 880, 886 (W.D. Mich. 2007) (citing United States v. General Elec. Co., 272 U.S. 476, 489 (1926); and Sicom Sys. Ltd. v. Agilent Tech. Inc., 427 F.3d 971, 976 (Fed. Cir. 2005)).

Courts define two categories of licensees for the purposes of determining standing: "exclusive" licensees and "bare" licensees. See id. (describing transferees and licensees). Exclusive licensees hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent. Id. An exclusive licensee "can be said to suffer legal injury from an act of infringement," Propat Int'l Corp. v. Rpost Inc., 473 F.3d 1187, 1193 (Fed. Cir. 2007), but its exclusionary rights "must be enforced through or in the name of the owner of the patent." Morrow v. Microsoft Corp., 499 F.3d 1332, 1340 (Fed. Cir. 2007). Thus, the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns. Id. (citing Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 467, 469 (1926)). Joining the patentee alleviates the risk that an alleged infringer might face multiple suits and multiple liabilities for a single act of infringement, Int'l Gamco, Inc. v. Multimedia Games, Inc., 504 F.3d 1273, 1278 (Fed. Cir. 2007), and prevents a party with lesser rights from bringing a lawsuit that may put the licensed patent at risk of being held

---

[6]Where a patentee transfers all substantial rights under the patent, the transferee (or assignee) will be deemed the effective patentee under the statute and has standing to bring suit in its own name. Ortho Pharm. Corp. v. Genetics Inst. Inc., 52 F.3d 1026, 1030 (Fed. Cir. 1995). Plaintiff does not assert that the license agreement transferred all substantial rights under the patent and does not claim to be a transferee or assignee.

5

invalid or unenforceable in an action that did not involve the patentee. Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1343 (Fed. Cir. 2006). However, joinder of the patentee is not necessary when the patentee is the infringer, or the prudential concerns are not at play in a particular case. Id.

The bare licensee receives no more than the licensor's "mere waiver of the right to sue for patent infringement." Great Lakes, 516 F. Supp. 2d at 886. A bare licensee has no right to exclude others from making, using, or selling products embodying the invention of the licensed patent, and thus has no legally recognized interest that grants the licensee standing to bring an infringement action. Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir. 1995).

Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant. Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998) (citation omitted). The use of the word "exclusive" is not controlling; what matters is the substance of the arrangement. Id. A licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that "others shall be excluded from practicing the invention" within the field covered by the license. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1552 (Fed. Cir. 1995). "Put another way, an exclusive license is a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave." Textile Prods., Inc., 134 F.3d at 1484 (Fed. Cir. 1998) (internal quotation and citation omitted, alteration in original). Here, the Ecosystems sublicense granted plaintiff the exclusive right to practice

the invention within a specific territory. See Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000) (discussing standing of holder of "exclusive, territorial license"). The fact that plaintiff's rights within it territory were subject to those of Forrest Keeling does not alter its status as an exclusive licensee. See WiAV Solutions LLC v. Motorola, Inc., 631 F.3d 1257, 1267 (Fed. Cir. 2010) (holding that "an exclusive licensee does not lack constitutional standing to assert its rights under the licensed patent merely because its license is subject . . . to rights in existence at the time of the license [and] to future licenses that may be granted only to parties other than the accused."). Plaintiff is an exclusive, rather than a bare, licensee for the purposes of standing.

As stated above, an exclusive licensee must enforce its rights through or in the name of the patent owner. Morrow, 499 F.3d at 1340. Defendant contends that, to establish standing, plaintiff was required to join the patent owner, RPM Technologies, from the outset.[7] The "doctrine of standing . . . has both constitutional and prudential components." Evident Corp. v. Church & Dwight Co., 399 F.3d 1310, 1313 (Fed. Cir. 2005) (citation omitted). Defendants do not contest that plaintiff satisfies the requirements of constitutional standing: plaintiff alleges it suffered an injury in fact, there is a causal connection between the injury and defendants' conduct, and the injury is redressable by a favorable court decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (requirements for Article III standing).

With respect to the prudential component, the Supreme Court and Federal Circuit Court of Appeals have stated that "an exclusive licensee that does not have

---

[7]Defendant concedes that its standing argument applies with equal force to its counterclaims.

all substantial rights does have standing to sue in his own name when 'necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself.'" Textile Prods., Inc., 134 F.3d at 1484 (quoting Waterman v. Mackenzie, 138 U.S. 252, 255 (1891)); Littlefield v. Perry, 88 U.S. (21 Wall.) 205, 223, 22 L. Ed. 577 (1874) (holding that plaintiff was an assignee, but stating that even if he were an exclusive licensee, he could bring suit in his own name, because the patentee was the infringer)). Joinder of the patentee is not necessary when the prudential concerns are not at play in a particular case. Aspex Eyewear, Inc., 434 F.3d at 1343. The prudential concerns include whether the plaintiff asserts its own legal interests or rights or rests its claim on the rights and interest of third parties; whether the issue requires "adjudicating abstract questions of wide public significance which amount to generalized grievances most appropriately addressed in the representative branches;" and whether plaintiff's complaint falls within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1348 n.13 (Fed. Cir. 2001) (internal quotations and citations omitted). Finally, "[t]he Supreme Court has confirmed that exclusive territorial licensees need not join the licensor to maintain a suit for patent infringement. Int'l Gamco, Inc., 504 F.3d at 1276 (citing Waterman v. Mackenzie, 138 U.S. 252, 255 (1891)).

The court concludes that neither side was required to join RPM Technologies to acquire standing to pursue their claims that the other violated their exclusive territorial licenses. Throughout the pendency of this action, the patent has been owned by the Lovelaces or by entities they control — Forrest Keeling, Lovelace

Farms, or RPM Technologies. Thus, the interests of the patent holder are fairly represented and there is no risk of invalidating the patent without the participation of the owner. Similarly, there is no risk of subjecting the alleged infringer to multiple liabilities. Furthermore, as events transpired, the Lovelaces now own the patent. While the patentee ordinarily is joined as a co-plaintiff, its participation as a defendant does not defeat the standing of an exclusive licensee to bring an infringement claim. See Evident Corp. v. Church & Dwight Co., 399 F.3d 1310, 1313-14 (Fed. Cir. 2005) (joinder of patentee as third-party defendant satisfied prudential standing requirements).

On January 15, 2015, Ecosystems Gulf Coast and Ecosystems Southeast assigned to plaintiff any claims they may have against Lovelace Farms or the Lovelaces. Pl. Exs. P and U [Doc. #80-1]. Plaintiff asserts for the first time in its summary judgment briefs that it is entitled to recover damages for defendants' alleged sales of RPM products into the new territories. Defendants argue that these claims are foreclosed by plaintiff's lack of standing under its original claim. Because the court finds that standing is established, the court will reject defendants' standing challenge to claims under the assignments.

### B. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the

9

underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

The court finds that entry of summary judgment is not appropriate at this time. First, there are a number of factual disputes. For example, there are disputes regarding whether defendants' accused sales involved RPM technology or fall within exceptions to licenses, when the Southeast and Gulf Coast nurseries were established, and the location of the sales. Second, the court believes that the sufficiency of plaintiff's evidence in support of its claims for lost profits and reasonable royalties is best evaluated at the close of all evidence.

With respect to plaintiff's claims for damages pursuant to the January 15, 2015 assignment, defendant objects that the new claims are beyond the scope of plaintiff's complaint. Plaintiff asserts that the court should grant leave to amend

the complaint to include new claims under Fed.R.Civ.P. 15(b) (court should freely permit an amendment if, at trial, a party objects that evidence is not in scope of pleadings or issue was tried by express or implied consent). The court will direct plaintiff to file a motion for leave to amend to include the additional claims. Defendants will be allowed to file an opposition.

Defendants also argue that the assignments were executed after the close of discovery, thereby preventing defendant from taking discovery or otherwise defending the claims. On September 23, 2014, plaintiff disclosed its intention to rely on infringing sales into the Gulf Coast and Southeast territories in its responses to defendants' first set of interrogatories. Defs. Ex. E [Doc. #86-5]. Defendants took the deposition of plaintiff's corporate representative on January 19 and 20, 2015, and questioned him about the assignments. Defendants had ample notice of plaintiff's intention and that argument is rejected.

Accordingly,

**IT IS HEREBY ORDERED** that the parties cross-motions for summary judgment [Docs. #80 and #84] are **denied**.

**IT IS FURTHER ORDERED** that, if plaintiff intends to pursue claims on behalf of RPM Ecosystems Gulf Coast and RPM Ecosystems Southeast, it shall file a motion for leave to amend its complaint not later than **June 18, 2015**. The defendant's response will be due seven days after the motion is filed.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of June, 2015.